IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 27, 2007

## STATE OF TENNESSEE v. OSHIA LYNN STARNES, a/k/a OSHIA LYNN BAFFA, a/k/a OSHIA LYNN BOFFA

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S51,567    R. Jerry Beck, Judge**

---

**No. E2007-00197-CCA-R3-CD - Filed December 28, 2007**

---

The appellant, Oshia Lynn Starnes, a/k/a Oshia Lynn Baffa, a/k/a Oshia Lynn Boffa, pled guilty in the Sullivan County Criminal Court to two counts each of identity theft, forgery, and misdemeanor theft and agreed to an effective sentence of four years with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court ordered that the appellant serve her effective sentence in confinement. On appeal, the appellant contends that the trial court erred by denying her request for alternative sentencing. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Joseph F. Harrison, Blountville, Tennessee, for the appellant, Oshia Lynn Starnes.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Rebecca Davenport and Joseph E. Perrin, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

At the appellant's guilty plea hearing, the State gave the following factual account of the crimes:

> On September 9th, 2005, Kara Baker reported to the Bristol
> Tennessee Police Department that someone had written two checks
> on her account, which was an old account, at the Wal-Mart on the

Volunteer Parkway, which is located in Bristol, Sullivan County, Tennessee.

After being notified about the checks having been passed, one for $28.70, the other for $31.40, and they were passed on August 23rd, '05, she contacted police and told them that she had not written the check, that – the two checks. And that she believed a suspect might be Wayne Starnes, who had been doing some work for her.

Ultimately Danny Farmer of the Bristol Tennessee Police Department tracked down Ms. Starnes after viewing a video tape from Wal-Mart which show[ed] Ms. Starnes as the person passing the check[s]. And he interviewed Ms. Starnes on November 15th, '05, and she identified the person in the video passing the checks to be her; and, in fact, was carrying the same purse the day she talked to Detective Farmer as she was on the day that the checks were passed.

The appellant pled guilty to two counts of identity theft, a Class D felony; two counts of forgery, a Class E felony; and two counts of theft of property valued less than five hundred dollars, a Class A misdemeanor. Pursuant to the plea agreement, the trial court sentenced the appellant as a Range I, standard offender to concurrent sentences of four years for each identity theft conviction; two years for each forgery conviction; and eleven months, twenty-nine days at seventy-five percent for each misdemeanor theft conviction. The trial court also imposed a five-hundred-dollar fine and ordered that the appellant serve her sentences consecutively to an unexpired Virginia sentence and any unexpired sentences in Tennessee. The manner of service of the effective four-year sentence was to be determined after a sentencing hearing.

At the hearing, the appellant testified that she was married and lived with her husband, his parents, and her four-year-old daughter. The appellant completed the tenth grade, was currently working full time for Domino's Pizza, and expected to be promoted to shift manager soon. She stated that she had been diagnosed with fibromyalgia and rheumatoid arthritis and had a tumor removed from her chest in 2003. The appellant said that due to a prior addiction to illegal drugs, she was trying not to take any medication for her ailments and was "toughing it out." She stated that she did not have a problem with alcohol but that she started using marijuana when she was twenty-one years old and last used the drug six years ago. In September 2005, the appellant entered a methadone clinic in Boone, North Carolina because she was using morphine, Percocet, OxyContin, and Oxycodone. The program terminated in February 2006, and she said she could pass a drug test.

The appellant testified that in 2002, she was convicted in Virginia of four counts of selling illegal drugs and received a ten-year probation sentence. Subsequently, she was convicted in Tennessee of writing thirteen bad checks on her personal bank account, and her probation in Virginia was revoked. The appellant was ordered to serve six months in jail for the probation revocation, and then her probation in Virginia was reinstated. Regarding her current offenses, the appellant testified that she knew passing the checks at Wal-Mart was wrong but that she still had a drug problem at that time. She stated that her daughter was going to start school soon and that she was "trying to

straighten up, just for her."

On cross-examination, the appellant testified that her mother had custody of her two other minor children. She acknowledged that she committed the current offenses while she was serving her probation sentence in Virginia and said that the Virginia authorities knew about her current convictions but had not yet found her to be in violation of her Virginia probation. She acknowledged that she was "high" when she passed the checks at Wal-Mart and stated that she had not repaid Wal-Mart for the checks because she "thought it went through the courts when I was ordered to pay fines." She said she had not used any illegal drugs since September 2005 but had taken one-half of a Lortab pill that her doctor had prescribed for cysts under her arms.

The State introduced the appellant's presentence report into evidence. According to the report, the then twenty-eight-year-old appellant dropped out of high school but obtained her GED. In the report, she stated that her mental health was excellent but that her physical health was fair because she suffered from fibromyalgia and rheumatoid arthritis. The appellant reported that prior to working for Domino's, she worked for Wendy's, Food City, Subway, and Craft-O-Matic. According to the report, the appellant has been convicted of several traffic offenses, including violating the seatbelt law and running a stop sign. The report confirms that she has thirteen Tennessee convictions for writing bad checks and that a ten-year probation sentence she was serving in Virginia for four drug convictions was revoked but reinstated.

The trial court noted that the appellant was presumed to be a candidate for alternative sentencing but stated that her "greatest unfavorable factor for alternative sentencing" was her criminal history. The court noted that her "rap sheet" spanned several pages, that she had been committing crimes since she was twenty-years-old, and that "she's been in continuous problems" since that time. The trial court gave no weight to the appellant's prior traffic offenses but believed her prior bad check convictions "deserve[d] weight." The trial court also found her prior four drug convictions in Virginia to be "significant" and noted that her probation in Virginia had been revoked previously. The trial court stated that the appellant was a drug addict and that it was "having trouble finding anything positive in the report." The trial court noted that the appellant had "indicated she's sorry, she wants to turn her life around. But evidence may have convinced other judges of that, too." It said that it did not "see much hope" for the appellant and ordered her to serve her sentences in confinement.

## II. Analysis

The appellant contends that the trial court erred by denying her request for alternative sentencing because her thirteen prior bad check offenses occurred during a ten-day period in 2004 and her four prior drug offenses occurred during one week in 2001; her drug addiction explains why she committed the prior offenses; the trial court failed to find that society must be protected from her; the State failed to show that deterrence is needed in this case; the case is not shocking or horrifying so as to warrant denial of alternative sentencing in order to avoid depreciating the seriousness of the offenses; and measures less restrictive than confinement cannot be characterized

as unsuccessful in this case. The State argues that the trial court properly denied alternative sentencing. We agree with the State.

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a) (2006). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). Under the 1989 Sentencing Act, sentences which involve confinement are to be based on the following considerations contained in Tennessee Code Annotated section 40-35-103(1):

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence was imposed. See Tenn. Code Ann. § 40-35-103(2), (4). Further, the "potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5).

Turning to the instant case, the trial court was greatly troubled by the appellant's numerous prior convictions for writing bad checks, prior drug convictions, and drug use. It noted that she had been committing crimes since she was twenty years old and that her probation sentence in Virginia

had been revoked. The trial court's statement that it did not see much hope for the appellant demonstrates that it believed she has very little potential for rehabilitation. We agree. The appellant has thirteen prior convictions for writing bad checks and served six months in jail for a probation revocation. Nevertheless, she stole two checks and forged them at Wal-Mart. Although the appellant contends that she is entitled to alternative sentencing because she has developed a positive attitude, has refrained from using illegal drugs, has maintained employment, and wants to parent her child, her prior criminal record and poor potential for rehabilitation support the trial court's conclusion that she should serve her sentences in confinement.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE